## NATIONAL GUARANTEE & FINANCE CO v OSBORNE et

Ohio Appeals, 2nd Dist, Franklin Co

No 2234. Decided Nov 17, 1932

Arthur L. Rowe, Columbus, for plaintiff in error.

W. S. Lyman, Columbus, for defendant in error.

## BY THE COURT

At the outset we are required to consider a motion of defendants in error to dismiss the petition in error for the reason (1) that plaintiff in error did not file its brief in this cause according to the rules of this court, and (2) for failure to perfect its proceeding in error according to law.

If the plaintiff in error is properly in this court under the statute, then there was no such dereliction in filing of brief as would require the drastic action of dismissal. Leave was taken to file brief in this court and it was filed within the time fixed.

On the second proposition we find that the judgment of the trial court was entered as of date August 2, 1932. On the 9th of September, 1932, the bill of exceptions was filed with the clerk of courts. On September 19, 1932, the bill was transmitted to the trial judge for signature. On the 30th of September, 1932, the bill was signed and certified by the trial judge. On the same day the bill was filed in the Court of Appeals. The petition in error was filed in the Court of Appeals on August 4, 1932,

and the transcript of docket and journal entries was filed the same day.

It will be observed from the above chronological record that the transcript of docket and journal entries and the bill of exceptions and the petition in error, all were filed in the Court of Appeals within the statutory time provided by §12270, GC, namely: 70 days after the rendition of the judgment. The only irregularity to be found is that the trial judge, after receiving the bill of exceptions, held it more than five days before signing and transmitting it to the office of the clerk of courts (§11566, GC) and failed to indicate any extender of time for signing the bill as required by §11569, GC. Therefore, the one question presented is whether or not the failure of the trial judge to observe the provisions of the two sections above set forth is such irregularity as to require dismissal in this court.

The exact question has been considered and determined by our Supreme Court in two cases. It will be sufficient to state the syllabi of these cases. In Pace v Volk, 85 Oh St, 413, the first and second proposition of the syllabus is as follows:

1. "Proceedings in error being statutory, the requirement of §11564, GC, that 'the party excepting must reduce his exceptions to writing, and file them in the cause, not later than forty days after the overruling of the motion for a new trial' is mandatory; but the provisions of the following sections defining duties of the clerk and of trial judges with respect to a bill of exceptions which a party has so filed within the time required are, as to the time of the performance of such duties, directory merely.

2. A bill of exceptions, taken upon the trial of a cause in the Court of Common Pleas, and by the exceptor reduced to writing and filed in the office of the clerk within the forty days so limited, will become a part of the record to be considered by a reviewing court if the bill is signed by the trial judge and filed in the office of the clerk in accordance with the requirement of §11572, GC."

In Porter v Rohrer, 95 Oh St, 90, the second proposition of the syllabus:

2. "If the excepting party has performed the statutory duty required of him relating to the preparation, filing and perfection of a bill of exceptions, and the same has not been properly perfected by reason of the nonfeasance of some ministerial act by the

clerk or trial judge, the excepting party may cause the same to be filed in the reviewing court at any time before the final consideration of the case in that court."

The motion of defendant must, therefore, be overruled.

Coming then to the merits of this case. Plaintiff in error instituted an action in replevin against defendants in error to recover the possession of an Essex automobile which they had sold to defendants in error and, to secure the payment of the purchase price, had taken a chattel mortgage on the property sold. It was the claim of the plaintiff in error that the conditions of the mortgage had been broken. Defendants in error answered, setting up first a general denial and second, that at the time of the purchase of the automobile the plaintiff agreed to furnish the defendants with a policy of insurance which would take care of their payments on the car of plaintiff in the event of the illness of defendant, J. Calvin Osborne, which would prevent him from making the same. A reply was filed denying the affirmative averments of the answer, and upon the issues thus drawn the cause went to trial, resulting in a verdict for defendants in error. At the conclusion of the case motion was made by plaintiff in error for directed verdict, which was overruled. Motion for new trial was duly filed, submitted, and overruled and judgment entered on the verdict. The transcript also discloses that this cause had theretofore been tried by a court and jury, resulting in a verdict for defendants which, upon motion for new trial, had been set aside as being manifestly against the weight of the evidence.

Several grounds of error are urged.

We are without power to set this judgment aside on the ground that the judgment was manifestly against the weight of the evidence, because a verdict has once been vacated on that ground. **Miami Conservancy Dist. v Shade, 12 Oh Ap, 169; Shank v Hamilton Foundry and Machine Co., 23 Oh Ap, 323; (5 Abs 497); Korona Jewelry & Music House v Loveland, 25 Oh Ap, 116, (5 Abs 51).**

There is left, then, but the one question upon which the jury could properly base its verdict for defendants in error, viz., their affirmative defense. It is undenied that it was agreed between Mr. Van Dorn and defendants in error that defendant, J. Clavin Osborne, was to have health and accident coverage; the certificate, Plaintiff's Ex. E, also indicates that plaintiff in error made the same promise. It is claimed

by defendant in error that such a policy was never issued to Mr. Osborne. The court properly charged the jury that if there was a master policy with health and accident coverage according to the agreement this was sufficient, although there may have been no individual policy issued to Mr. Osborne. It can not be disputed, that, inasmuch as the defendant, Osborne, received seven checks from the Public Indemnity Company of Newark, New Jersey, because of permanent disability that he was covered during this period with health insurance, but the difficulty in this record is to find that Mr. Osborne was covered with health and accident insurance for the whole period during which the installments owing on the automobile were due and paid. The master policy is without informative effect to this court on this question as it must have been to the jury. There is nothing in it or collateral to it in writing to indicate that Mr. Osborne was covered at all nor, is there anything in the record to definitely establish that he had been insured by the seller of the automobile for the period during which his obligations under the purchase agreement were paid.

Let us examine the first few lines of the master policy which, it is claimed, met the obligation of the plaintiff in error, to Mr. Osborne.

PUBLIC INDEMNITY COMPANY, Home Office: Newark, N. J.

Purchasers' Disability Policy.

(A Stock Company)

Hereinafter called the Company. No. PD 7.

In consideration of the payment of the premium of **to be determined** Dollars, does hereby insure **National Guarantee & Finance Company** for the **account of whom it may concern** who is the purchaser of an automobile from —— dealer, subject to the provisions, conditions and limitations herein contained, in the sum of —— Dollars ($——) per month (herein called Monthly Indemnity) for a term of —— calendar months from twelve o'clock noon on the 1st day of **July, 1929,** Standard Time at the place of residence of the Insured, against—

If we were required to construe this contract we would have great difficulty in determining, first, who, if anybody, is covered by the insurance under the contract; what amount, if any, is due from the insured to the insurer; what period, if any, the policy covers. We will frankly say that such an instrument as this so-called indemnity insurance policy has never before come to our

attention. We do not see how an arrearage in payments due from Osborne could have occurred if the insurance policy was effective according to the agreement with the plaintiff in error and the Osbornes. When the checks which Osborne received were indorsed to plaintiff in error the proceeds were sufficient to enable it to pay the insurance company any premium due, which plaintiff in error was obligated to do. The agreement which the plaintiff in error made with Mr. Osborne required it to secure a policy, the conditions of which would save Mr. Osborne from payment of the installments due on the purchase price of the automobile and carrying charges on and after the date of disability. If this obligation was kept, why would the payments from the insurance company cease before all the installments due were paid?

There is one check in the record from the National Guarantee and Finance Company to W. S. Mays and Company, Inc., dated November 8, 1929, but it is without any probative effect to fix the time to which it paid premiums on the master policy.

The record is uncertain on the reason why the insurance benefits ceased to be paid to Mr. Osborne. It seems that it is the claim that when he failed to keep up his payments to the plaintiff in error his insurance ceased, but this was the condition of the master policy, namely, that if, as a result of bodily injury or sickness or disability as herein above defined, the insured suffers total disability as described above, the company will pay for the number of days of said total disability proportionately at the rate of said monthly indemnity, but in no event for any period beyond the date of the expiration of the policy. Now, if the policy was issued on Mr. Osborne, it was the agreement, according to the Osbornes' whom the jury had the right to believe, that a policy would be secured which would protect Mr. Osborne during the period covered by the installments on the purchase price of the automobile if Mr. Osborne became totally disabled. He was totally disabled during a period beyond his payments from the insurance company.

After a full consideration of the record we can not say that there was no evidence to support the claim of defendant in error and the judgment will, therefore, be affirmed.

ALLREAD, PJ, HORNBECK and KUNKLE, JJ, concur.