**VENDITTI v MUCCIARONI et**

Ohio Appeals, 7th Dist, Ashtabula Co

Decided Aug 21, 1936

BARNES, PJ, HORNBECK and BODEY, JJ, concur.

Jack B. Dworken, Cleveland, and Herc. Paulino, for appellants.

Howell, Roberts & Duncan, Cleveland, for appellee. Also C. L. Shaylor, Ashtabula.

## OPINION

By NICHOLS, J.

Michael Venditti, plaintiff-appellant, sued Michael Mucciaroni, defendant, in the Common Pleas Court of Ashtabula County, and therein obtained a judgment against the defendant in the sum of $6291.77 for personal injuries alleged to have been received by Michael Venditti when the automobile in which he was riding in the city of Ashtabula on the evening of the 12th day of February, 1933, was struck from the rear by the automobile of Michael Mucciaroni. The Fidelity & Casualty Company of New York, defendant-appellee, defended the original action upon which judgment was obtained by Michael Venditti against Michael Mucciaroni, but no proceedings were instituted for the reversal of that judgment which was rendered on the 13th day of December, 1934.

In accordance with the provisions of §9510-4, GC, effective October 3, 1933, plaintiff filed his supplemental petition in the action in the Common Pleas Court of Ashtabula County, naming The Fidelity & Casualty Company of New York as a new defendant, alleging in the supplemental petition that leave of court had first been obtained to make The Fidelity & Casualty Company of New York a new defendant in the action in accordance with the provisions of §9510-4, GC, and setting forth the judgment recovered by Michael Venditti against Michael Mucciaroni; that the judgment is unreversed and unsatisfied and was obtained on account of bodily injuries to plaintiff by reason of an automobile accident, and further alleged that the new defendant, The Fidelity & Casualty Company of New York, at the time of the occurrences set forth in the original petition, had issued its policy of insurance to the original defendant, Michael Mucciaroni, which policy of insurance was in full force and effect at the time plaintiff's cause of action arose, and that the policy, among other things, provided that in the event a judgment was recovered against the original defendant, Michael Mucciaroni, in a sum not exceeding $10,000, that the new defendant, The Fidelity & Casualty Company of New York, would pay the same, and agreed to satisfy any judgment which might be obtained by any person injured by the automobile of the original defendant, in an amount not exceeding $10,000, and agreed to comply with the laws of the state of Ohio with reference to the payment of such judgment in force at the time the judgment was obtained.

The supplemental petition further alleged that the judgment so obtained had not been satisfied within thirty days after the date of its rendition and prayed for judgment against the new defendant for the amount of the judgment with interest and costs.

The Fidelity & Casualty Company of New York, before the time in which it was required to plead, filed in the Common Pleas Court of Ashtabula County its petition for removal of the action set up in the supplemental petition against it to the District Court of the United States for the Northern District of Ohio, Eastern Division, upon the ground of diversity of citizenship. Upon motion filed in the District Court of the United States upon behalf of Michael Venditti the cause was remanded to the Common Pleas Court of Ashtabula County for reasons which are not important here. Thereafter, The Fidelity & Casualty Company of New York filed its answer and later its amended answer to the supplemental petition of plaintiff, admitting in the amended answer that about the time al-

leged in the supplemental petition the plaintiff recovered the judgment hereinabove referred to and admitting that it had issued a policy of insurance to Michael Mucciaroni, but denying that the policy of insurance was in full force and effect at the time the plaintiff's claimed cause of action arose, because it alleged that prior to obtaining the issuance of this policy the plaintiff, Michael Venditti, and the defendant, Michael Mucciaroni, had entered into a conspiracy to defraud this insurance company, and by this conspiracy it was agreed between Venditti and Mucciaroni that Mucciaroni purchase an automobile and immediately obtain a policy of liability insurance, and that thereafter they would have a pretended accident or collision between the automobile of Venditti and the automobile of Mucciaroni, in which accident the plaintiff would claim to have received personal injuries, and that thereupon this defendant insurance company would be notified of the accident and a claim would then be made by Venditti against this insurance company; that Mucciaroni would admit that the accident was the result of his negligence; that the claimed injuries caused by Venditti were occasioned by the fault of Mucciaroni; that if this insurance company refused to pay the claim there would then be filed a law suit by Venditti against Mucciaroni for the purpose of obtaining a judgment by Venditti against Mucciaroni; that if this insurance company would thereafter be compelled to pay the judgment, the money so paid by this insurance company would be divided between the plaintiff and the defendant, Mucciaroni; that the conspiracy was entered into between plaintiff and the defendant, Mucciaroni, for the unlawful purpose of defrauding this insurance company.

The amended answer of the insurance company further alleged that the plaintiff Venditti, and the defendant, Mucciaroni, carried out and executed this unlawful conspiracy to defraud this insurance company; that the insurance company did not know of such unlawful and fraudulent scheme and conspiracy and has only learned of the same recently, and it was further alleged that because of such fraud and unlawful conspiracy the policy of insurance never became effective and was never a binding contract between the parties thereto, and was, therefore, null and void; and that upon the discovery of such unlawful and fraudulent scheme and conspiracy the insurance company returned or offered to return to the defendant, Mucciaroni, the amount of money which he has paid to the insurance company on account of the premium for the policy of insurance.

As a further defense to the supplemental petition filed against it, the insurance company alleged that even though it should be found that the policy of insurance issued by it to Mucciaroni became effective and was a valid and binding contract between the parties, which the insurance company denied, nevertheless the policy by its terms provided that in the event of an accident caused by the automobile of the defendant, Mucciaroni, he shall not voluntarily assume any liability. In this second defense the insurance company alleged facts which it claimed constituted voluntary assumption of liability on the part of the defendant, Mucciaroni, for the accident and injuries to the plaintiff, all without the knowledge or consent of the insurance company and whereby the terms of the policy of insurance were violated and the insurance company thereby relieved of any and all liability under the policy.

For a third defense to the supplemental petition filed against it, the insurance company alleged that although it denied that the policy of insurance ever became effective or was ever a valid or binding contract on the company by reason of the facts set forth in its first and second causes of action, nevertheless the policy of insurance also contained the further provision that the insured, Mucciaroni, shall cooperate with the insurance company (except in a pecuniary way) in all matters which the company may deem necessary in the defense of any suit, and the insurance company alleged that the insured, Mucciaroni, violated the terms of the policy of insurance in failing to cooperate with the insurance company in the defense of the suit brought by plaintiff against Mucciaroni, and that Mucciaroni upon the trial of the action brought against him by plaintiff, gave a different account in his testimony with respect to the happening of the claimed accident than he had given to the insurance company in his statement and report of the happening of the claimed accident and that the variance was upon facts which were material as bearing upon the question of liability, and that the variance between the report of the defendant, Mucciaroni, to the insurance company and his testimony upon the trial of the case was made with full knowledge upon the part of Mucciaroni.

In its third defense to the supplemental petition, the insurance company alleged that the insured, Mucciaroni, in violation of the terms of the policy of insurance, failed to cooperate with the company further in that he fraudulently deceived the insurance company in reporting the accident by pretending that the same was genuine and bona fide and in not disclosing to the insurance company that the accident was a part of a fraudulent and deceitful scheme and conspiracy between the plaintiff and the defendant, Mucciaroni, by which it had been planned and agreed between them that they would have a collision between their automobiles for which collision Mucciaroni would assume full blame, and that by a collusion they would cooperate so that the plaintiff might obtain a judgment against the defendant, Mucciaroni, and thereby make a claim against this insurance company upon the policy of insurance and thereby defraud the insurance company; and that the frandulent scheme and unlawful conspiracy was actually carried into effect by the plaintiff and the defendant, Mucciaroni.

For reply the amended answer of The Fidelity & Casualty Company of New York, the plaintiff, Michael Venditti, denied the fraudulent conspiracy set forth in the amended answer; denied that the defendant, Mucciaroni, violated any of the provisions of the policy of insurance or voluntarily assumed liability to the plaintiff; denied that the defendant, Mucciaroni, did not aid the insurance company in securing information and evidence; denied that Mucciaroni did not cooperate with the insurance company, and averred that Mucciaroni did aid the insurance company and did cooperate with it in every way; denied that there was any collusion or conspiracy between the defendant, Mucciaroni, and the plaintiff, and denied generally each and every allegation contained in the amended answer to the supplemental petition.

Further replying the plaintiff alleged that The Fidelity & Casualty Company of New York appeared for and on behalf of the defendant, Mucciaroni, in the trial of the original action and together with defendant participated in the trial of the action and was therefore barred from denying any claim under the policy of insurance and estopped to assert any of its averments of collusion or want of cooperation, and by appearance and defense of the original action has waived any and all claims which it might have to declare the policy of insurance null and void, or to rescind the insurance contract.

Upon the trial of the cause of action set up in the supplemental petition the jury returned its verdict in favor of The Fidelity & Casualty Company of New York and judgment in its favor was duly rendered upon the overruling of a motion for new trial.

The cause comes into this court upon appeal of law by Michael Venditti. The errors assigned in the brief of appellant are:

(1) The court erred in overruling appellant's motion for judgment on the pleadings and the opening statement of counsel;

(2) The court erred in the admission of evidence to the prejudice of the appellant, to which timely objection was made and exceptions noted;

(3) The verdict of the jury and the judgment of the court sustaining the verdict for appellee is not sustained by sufficient evidence and is manifestly against the weight of the evidence;

(4) The verdict of the jury and the judgment of the court is contrary to law;

(5) The court erred in its charge to the jury.

1. The first of the assigned errors is based upon the claim of appellant that the proceeding authorized by the provisions of §9510-4, GC, wherein one who has obtained a judgment for bodily injuries may file a supplemental petition against the insurance company, is not an original action in which all defenses are available but is merely an auxiliary proceeding in aid of execution wherein fraud in obtaining the insurance policy can not be raised as a defense, it being claimed that the only way in which fraud in obtaining the policy could be brought into court is by an original proceeding either to cancel the policy or in an action to set aside the judgment on the ground of fraud, none of which proceedings were begun. In furtherance of the contention made by appellant in this behalf, it is pointed out in the brief that: The pleadings and opening statement of counsel for the insurance company conceded the issuance of the insurance policy in question to Mucciaroni, against whom the judgment for bodily injuries was rendered in favor of appellant, and likewise conceded that the insurance company had investigated the original action and defended the same in the Common Pleas Court; admitted that the insurance policy was issued prior to the collision and injuries received by appellant; that report was made by the insured to the company within three

days after the accident; that the insurance company had procured counsel to defend the original suit and that the counsel so procured by the insurance company had prepared and filed the answer of the defendant, Mucciaroni, and conducted the trial on his behalf in the Common Pleas Court, and that a period of two years and seven months had elapsed subsequent to the date of the collision and the filing of the amended answer of the insurance company to the supplemental petition, during which time the insurance company had an opportunity to investigate the facts and decide whether it would defend or refuse to defend the action, that is, to decide whether there was fraud and elect to rescind or be bound by the contract, and during that period it had elected to defend without any reservations and without raising any questions or issues of fraud or lack of cooperation. And it is contended by appellant that by reason of these admitted facts the appellee is estopped to raise the issue of fraud and conspiracy in the procurement of the policy. In this connection it is the claim of the appellant that the remedy of the insurance company, if it desired to plead fraud and lack of cooperation on the part of the insured, was to file a motion or petition to set aside the original judgment on the ground of such alleged fraud if the insurance company could establish that it had no knowledge of the fraud at the time it defended the original action.

The insurance company had not been named a party to the proceeding prior to the rendition of the original judgment and although in a certain sense it can not be said to have been a stranger to the action since it received notice and came in and defended the same, yet we are of the opinion that the determination of the question whether the company is estopped to question the conclusiveness of the judgment does not depend upon the method which it might adopt in its effort to seek relief from the consequences of the alleged fraud and conspiracy. Undoubtedly, if the insurance company, at a time preceding the trial of the original action, knew of the fraud and conspiracy alleged in its amended answer, it would later be estopped to open the judgment either by motion or petition or by defense to the supplemental petition herein, but estoppel can not exist except where the person claim- ed to be estopped has full knowledge of all the material facts necessary to determine whether he will elect to rescind the contract and refuse

to defend the action. It is not shown in the pleadings or in the opening statement of counsel that the insurance company had any knowledge of the fraud and conspiracy alleged by it in its amended answer to the supplemental petition. Indeed, it is expressly alleged in this amended answer and set forth in the opening statement of counsel for the insurance company that it did not have such knowledge until after it had filed its original answer to the supplemental petition.

Michael Venditti was not a party to the insurance contract which was entered into between The Fidelity & Casualty Company of New York and Michael Mucciaroni, and with or without the code provisions authorizing the proceeding against the insurance company, the rights of Venditti could rise no higher than the rights of Mucciaroni under the contract of insurance. Undoubtedly, if Mucciaroni had paid the judgment obtained against him by Venditti and had sought in an original action to recover against the insurance company under the insurance contract, the company could have defended on the ground of fraud. The statute in question, §9510-4, GC, can not and does not attempt to give to Venditti any higher or greater right than Mucciaroni has under the contract of insurance so that it seems clear to us that since the insurance company could defend an action brought by Mucciaroni against it for the amount paid by him as judgment for bodily injuries received in the automobile accident, it necessarily follows that the insurance company may set up the same defense against Venditti and that this right is not defeated because of the provisions of §9510-4, GC, which ██ authorize the judgment creditor in such case to file in the same action a supplemental petition for the recovery against the insurance company of the amount of the judgment for bodily injuries.

We are furnished with a copy of the opinion of the United States District Court upon the motion to remand this cause to the Common Pleas Court of Ashtabula County wherein it seems that the District Court was of the opinion that the proceeding authorized by §9510-4, GC, was merely an auxiliary proceeding in the nature of a proceeding in aid of execution. We are not attempting to review the action of the District Court in remanding the cause, but we think it immaterial whether the provisions of §9510-4, GC, are to be considered as an auxiliary proceeding in aid of execution or

as an original action, as we hold that the same defenses could be set up in either of these proceedings. It is difficult for us to understand why one against whom a proceeding in aid of execution has been filed would be prevented from showing in such proceeding that it was not indebted to the one against whom the judgment was rendered whereon the execution was levied, and one of these ways in which it could be shown that no indebtedness existed on behalf of the insurance company to Michael Venditti was by showing that by reason of fraud and conspiracy the insurance contract made by the insurance company was void and of no effect. We need not determine here whether Michael Venditti in the first instance may have made both Mucciaroni and the insurance company parties defendant to the original action. The plaintiff in the court below did not so elect to make both Mucciaroni and the insurance company parties defendant to the original action, but did elect to proceed in the first instance against Mucciaroni alone and then attempted to avail himself of the permissive provisions of §9510-4, GC.

Let us suppose that in the first instance Michael Venditti was authorized to join the insurance company with Mucciaroni as an original defendant in the action brought by him in the Common Pleas Court for damages for bodily injuries, and let us suppose that the insurance company had been required to defend such action and did, because of its insurance contract, attempt to defend it, and the cause proceeded to judgment without any knowledge upon the part of the insurance company of the fraudulent conspiracy between Venditti and Mucciaroni and in the original action judgment had been obtained against both Mucciaroni and the insurance company and, thereafter, the insurance company had discovered the fraud and conspiracy as alleged in the amended answer. It is clear in this exampled situation that the insurance company might, on the ground of fraud, open up the judgment obtained against it even at a subsequent term and defend the original action on the ground of fraud and conspiracy.

It must be remembered that the claim of fraud and conspiracy alleged in this case, if established, was fraud and conspiracy upon the part of both the plaintiff Venditti, and the defendant, Mucciaroni, and neither can obtain advantage by reason of the wrong committed. That plaintiff elected to avail himself of the permissive provisions of §9510-4, GC, instead of bringing a new action against the insurance company to recover the amount of the judgment does not alter the fact that the insurance company was not named as a defendant in the original petition.

We believe and hold that the sole purpose of the provisions of this section of the General Code was to authorize a more speedy method of procedure ▮▮▮ than by the former practice of instituting a separate action against the insurance company, but without in any way materially changing the rights of the insurance company to defend upon any ground which was available under the former procedure, and we hold that the insurance company is lawfully entitled to interpose the defenses set up in its amended answer, and that if it be true, as alleged in the amended answer and as stated in the opening statement of counsel, that it but recently obtained knowledge of the alleged fraud and conspiracy, it was not estopped to defend on that ground. Appellant has urged in support of his contention that he was entitled to judgment upon the pleadings and opening statement of counsel that there is no evidence in the record showing failure upon the part of the insured to cooperate with the insurance company and further that there is evidence in the record tending to show that the insurance company at the time it defended the original action knew of the alleged fraud and conspiracy charged in its amended answer to the supplemental petition. It is well settled that where an issue ▮▮▮ sue is made by the defendant as to any material allegation of plaintiff's petition judgment can not be rendered upon the pleadings.

In further support of appellant's claim that the trial court erred in failing to render judgment for the appellant upon the pleadings and opening statement of counsel for the insurance company, it is contended that the appellee is barred from attacking the judgment in the original action because such judgment is res judicata, and we are cited to two cases upon which appellant relies, the first being that of Washington Gas Light Co. v District of Columbia, 161 U. S. 316, 16 S. Ct. 564, 40 L. Ed. 712, wherein it is stated in the opinion at page 330, by Mr. Justice White:

" 'When a person is responsible over to another, either by operation of law or by express contract, and he is duly notified of the pendency of the suit, and requested to take upon him the defense of it, he is no

longer regarded as a stranger, because he has the right to appear and defend the action, and has the same means and advantages of controverting the claim as if he were the real and nominal party upon the record. In every such case, if due notice is given to such person, the judgment, if obtained without fraud or collusion, will be conclusive against him, whether he has appeared or not'."

We have emphasized the words "if obtained without fraud or collusion." We think this language supports our belief and holding that fraud and collusion in the obtaining of the original judgment in this case are available to the insurance company in the action set up against it in the supplemental petition herein.

If we concede that the facts alleged in the amended answer of the insurance company are true (the truth thereof being required to be conceded for the purposes of this motion), to hold that such fraud and conspiracy are no defense to the insurance company would be to place a premium upon fraud and deceit and make of the law an instrumentality of protection to the wrongdoer. In effect it would mean that the greater the cunning, deceit and fraud the less it can be defended against. We do not subscribe to such doctrine.

The fourth paragraph of the syllabus in the case of Washington Gas Light Co. v District of Columbia, supra, as reported in 40 L. Ed., is:

"A judgment against a defendant who has a right of action to recover over against a third party is conclusive upon the latter, provided he has notice and full opportunity to defend."

It can not be said that the defendant, Mucciaroni, has a right of action to recover over against the third party if it be conceded that the contract of insurance was obtained by his fraud and conspiracy. Nor can it be said that without notice of such fraud and conspiracy the insurance company had "full opportunity to defend" the original action.

The second case cited to us as authority for holding that the original judgment is res judicata is that of **Fidelity & Casualty Co. of New York v Blausey, 49 Oh Ap 556, (18 Abs 15) 197 NE 385.** This is not a case involving fraud and deceit, but is one in which the insurance company, after assuming the defense of the action as required

in its policy of insurance, later undertook the defense of non-liability on the ground that the claim was not covered by the terms of the policy. We think the court was clearly right in holding that the company was estopped to make this defense, but the decision has no application to a case wherein fraud and deceit were practiced in obtaining the original judgment, which fraud and deceit had not come to the knowledge of the insurance company at the time the original judgment was rendered.

By supplemental brief counsel for appellant have cited us to certain other cases to which we will briefly refer. The case of **Miller v Rhoades, 20 Oh St 494,** wherein no question of fraud is involved and, hence, the holding therein is clearly distinguishable from the case at bar.

The case of **First National Bank of Mt. Vernon v First National Bank of Lincoln, 68 Oh St 43, 67 NE 91,** was an action by the holder in due course of a negotiable promissory note, such holder having recovered and received from the maker of the note the amount due thereon, after which one of the payees of the note claimed that her signature as an indorser upon the note had been forged and this payee brought her action against the holder of the note to recover the one-half due her thereon as one of the two payees. The Lincoln Bank, holder of the note, notified the Mt. Vernon Bank that it had been sued by the payee and later gave the Mt. Vernon Bank notice of the time set for trial. The Mt. Vernon Bank did not intervene in the action of the payee against the Lincoln Bank and, judgment having been obtained against the Lincoln Bank and paid by it to the payee, the Lincoln Bank brought suit in Ohio against the Mt. Vernon Bank to recover the amount which it had paid to the payee. The Supreme Court held that the Mt. Vernon Bank, in indorsing the note, had guaranteed all former indorsements including the forged signature of the payee. The proposition contended for by counsel for appellant in the case at bar, to the effect that the Lincoln Bank was conclusively bound by the former judgment with respect to the forgery, was sustained by the Supreme Court. There was no question of fraud upon the part of the Lincoln Bank, and again we call attention to the fact that in the case at bar the fraud and conspiracy alleged is the fraud perpetrated by one who is now seeking to recover against the insurance company upon a judgment fraudulently obtained. We think the cases are clearly distinguishable.

The case of **Boehmke v Northern Ohio Traction Co.**, 88 Oh St 156, 102 NE 700, is one in which he who knew himself to be the wrongdoer sought to be made liable in an action for damages for the wrong, voluntarily appeared by his attorney and answered in the name of and ostensibly as another person who was by the plaintiff named as defendant, and served with process in the mistaken belief that the latter person did the wrong. It was held by the Supreme Court that the former person, that is the actual wrongdoer, thereby submitted himself to the jurisdiction of the court and that it was proper to substitute the real defendant in place of the nominal defendant sued by mistake; and that the substituted defendant was bound by the verdict and judgment rendered against him in the case. Clearly the facts in Boehmke v Traction Co., supra, have no similarity to the facts in the case at bar and the decision of the court therein can have no application to this case.

We see no error prejudicial to the rights of Michael Venditti in the overruling by the trial court of his motion for judgment upon the pleadings and opening statement of counsel for the insurance company.

2. We have carefully read the record in this case and have particularly noted the testimony to which our attention has been called in the brief of counsel for appellant wherein it is claimed that prejudicial error was committed by the trial court in overruling objections of appellant to the introduction of certain testimony offered by the insurance company on the trial. This testimony was all with reference to a fire which burned a building wherein the appellant suffered loss to certain household goods. The court limited the consideration to be given this testimony by the jury to the purpose only of showing the time of certain occurrences which were material to the defense, and instructed the jury that they were to consider this testimony for no other purpose than as showing this date. We do not believe that the effect of this testimony was in any way responsible for the verdict rendered by the jury, and we find and hold that there was no error prejudicial to the rights of the appellant in the admission thereof.

5. At this point we deviate from the order in which appellant has assigned his grounds of error and take up the matter of claimed error in the charge of the court to the jury.

The trial court charged the jury that the burden was upon the insurance company to prove the alleged fraud and conspiracy set up in its amended answer by a preponderance of the evidence, that is, by the greater weight of the evidence. It is the claim of appellant that the trial court should have charged the jury that the burden upon defendant to prove fraud and conspiracy was by "clear and convincing proof" or by a "preponderance of clear and convincing evidence," it being insisted that the measure of persuasion in civil cases has to be safely and fully convincing where fraud is involved.

The question of the degree of proof required to prove fraud in a civil action has given the courts of Ohio much concern, From an examination of the ██ cases we conclude that fraud ordinarily may be proved by a preponderance of evidence. The broad proposition has been laid down by our Supreme Court that in the trial of a civil action wherein the claim is based on alleged fraud the issue may be determined in accordance with the preponderance or weight of evidence whether the facts constituting the alleged fraud do or do not amount to an indictable offense. **Jones, Stranathan & Co. v Greaves**, 26 Oh St 2, 20 Am. Rep. 752.

In the case of **Merrick v Ditzler**, 91 Oh St 256, 110 NE 493, wherein a member of the family of a deceased person was attempting to establish a contract for services, the Supreme Court held that such contract must be established by clear and convincing proof and by repeated decisions of both the Supreme and lower courts it has been settled that written instruments executed in conformity with the provisions of the deeds act shall not be rescinded or set aside except upon proper allegations which are supported by evidence of a clear and convincing character, and that a mere preponderance of evidence sufficient to determine verdicts in ordinary civil actions is not sufficient. **17 Ohio Jurisprudence 409**, and cases cited.

But this action is not a proceeding to set aside an instrument having the solemnity of a deed, nor is it an action wherein a member of the family of a ██ deceased person is attempting to establish a contract for services. We are not able to find any authority in Ohio for holding that in an action at law wherein the claim or defense is based upon fraud such as alleged in the amended answer of the appellee, such fraud must be proven by other than the preponderance of the evidence. We find that the

rule set forth in the syllabus in the case of Jones v Greaves, supra, is applicable to the case here and that the issue in this action was proper to be determined in accordance with the preponderance or greater weight of the evidence and that there was no error prejudicial to the rights of the appellant in the charge of the trial court.

We quote from the syllabus in the case of Bates, Trustee v Firestone, 20 Oh Ap 51, (1 Abs 817), 153 NE 144:

"2. When a stock subscriber claims that his subscription was obtained by fraud, the burden is upon him to prove the fraud by a preponderance of the evidence."

We quote from the syllabus in State Savings & Trust Co. v Grady, 20 Oh Ap 385, (1 Abs 503), 153 NE 238:

"2. In a case at law a defense that signatures to a promissory note were obtained by fraud is established by the greater weight of the evidence."

Motion to certify was overruled in the last cited case. In the able opinion by Mauck, J., the authorities upon this subject are reviewed.

In Bell v McGinness, 40 Oh St 204, 48 Am. Rep. 673, after a review of the earlier decisions, it is stated in the opinion, at page 205:

"The plain tendency of these cases, however, is to apply the rule of preponderance of proof in all issues in civil cases.

"A finding for the government against the citizen may be followed by deprivation of life or liberty, and hence the propriety of the rule that no such finding should be made without the strong and clear proof required by the rule, beyond a reasonable doubt. But in a controversy between man and man, affecting nothing but a claim, or a defense to damages, and involving nothing but pecuniary or property interests, the reason of the rule wholly fails, and the parties should be on an equality as to the quantum of proof required to establish any material fact. The tendency of modern decisions in other states is to the view we have here taken."

3. Was the verdict of the jury manifestly against the weight of the evidence? From the record we quote a part of the testimony of one Adolph Banducci, in whose home the appellee claims that the fraudulent conspiracy was formed, as set forth in its amended answer. From page 206 of the record we find:

"Q. Just tell what the conversation was, who said it, and what they said. A The conversation was Mike Venditti was addressing Mike Mucciaroni that he had a scheme framed up by which they could earn easy money and that was to purchase a car and get it insured, then have a collision between them and then sue the company for indemnity on insurance.

Q. Who said that? A. Mike Venditti.

Q. And what did Michael Mucciaroni say, if anything, when Venditti said that? A. Mike Mucciaroni grinned and he approved * * * Mike Mucciaroni, he says, 'O. K.'

Q. Now then, did they say anything further? A. Furthermore they said after several schemes on these occasions why then we can return over to the old country and have a good time."

From pages 229 and 230 of the record we quote the testimony of Amelia Banducci:

"Q. Will you tell the interpreter first just what you heard Mike Venditti say; tell the interpreter and she will give it in English? A. He said with the money from the furniture it is the best thing we buy a car and insure it and have a wreck and then sue the insurance company for the money.

Q. Now what else did you hear said at that time? A. With the money we get we will retire and go abroad on a trip.

Q. Anything else that you heard Mike Venditti say at that time? A. No, nothing else. * * *

Q. Just tell what you heard Mike Mucciaroni say after Mike Venditti said that? A. 'You are talking right; you talk well, you speak well.' * * *

Q. What did they tell you? A. That they were dumb with work you don't make any money."

The record discloses that the conversation between Venditti and Mucciaroni, referred to in the above quoted testimony of Mr. and Mrs. Banducci, took place about a month before the policy of insurance was obtained. The record further discloses that Michael Venditti and Michael Mucciaroni were born in the same town in Italy where they were neighbors, played together and went to school together. In the year 1915 they came to the United States on the same boat. When they first came to the United States they separated for a while, but about a year later they came together again in Erie, Pennsylvania, and from that time on they lived in the vicinity of Erie, Ashtabula and Conneaut. Except

for odd jobs occasionally they had been out of work for quite a while before the 15th day of December, 1932, when Mucciaroni bought a second-hand Chevrolet coupe automobile in Erie, Pennsylvania, paying $35 for it; whereupon he came to Ohio and procured a license to operate the car, stating at that time that he intended to move to Ohio. On December 16, 1932, Mucciaroni went to the office of The Fidelity & Casualty Company in Erie, Pennsylvania, and told the lady in charge that he wanted to buy a policy of liability insurance and after some conversation he purchased the policy in question. The year's premium on that policy was $48.80, more than the cost of the automobile, but he arranged to pay for just one quarter of the premium at that time, carrying the policy in force up to March 16, 1933. At about the same time Venditti went to live with relatives in Ashtabula and Mucciaroni went to live with relatives in Conneaut.

Venditti testified that he did not have any car until about the first of the year 1933, at which time he bought a second-hand Chevrolet coupe automobile for $35; that he did not take out any liability insurance on the car, but about six days before the collision in question Venditti did take out a sick and accident insurance policy upon which he collected the benefits on account of the injuries received by him in the collision in question.

On the evening of February 12, 1933, while both of these Chevrolet coupe automobiles were being operated by their respective owners in the same direction upon one of the public streets of the city of Ashtabula, Mucciaroni ran his car into the rear of Venditti and Venditti's wife claimed to have received certain injuries. After the collision Mucciaroni reported the same to the insurance company and gave to the company a statement, over his signature, to the effect that at the time he was driving only 20 miles per hour. Upon the trial of the original action Mucciaroni testified that he was driving his automobile about 35 miles per hour.

There is some testimony in the record that Mucciaroni and Venditti had spent the whole afternoon preceding the accident together in Ashtabula, although both of them denied this fact. Both Venditti and Mucciaroni, after the collision, went to the hospital for a short time, and after suit was filed by Venditti against Mucciaroni they went to live together again, occupying the

same room, and while they were living together in the same room, Venditti testified that they talked about the law suit but that nothing was said about Mucciaroni having liability insurance, nor about where he would collect the money if he did get a judgment against his friend, Mucciaroni, who had nothing from which a judgment could be collected. Venditti testified further that when he brought suit and when he was living with his friend, Mucciaroni, he did not know Mucciaroni had any insurance.

In the statement given by Mucciaroni to the insurance company within a few days after the collision he reported that the accident was "my fault." Without the knowledge of the insurance company, Mucciaroni also gave to Michael Venditti's attorney a written statement of facts with reference to the collision differing in some respects from the statement he had given to the insurance company, not admitting therein that the collision was his fault.

Many other facts might be recited from the record which were pertinent for consideration by the jury in determining whether the allegations of the amended answer of the insurance company were true, and evidence was submitted on behalf of the appellant which, if believed by the jury, had a tendency to discredit the testimony of Mr. and Mrs. Banducci as to the conversation which they testified had taken place in their home between Venditti and Mucciaroni. But from a very careful consideration of the whole record we are satisfied that there is much credible evidence of a probative value from which the jury was warranted in finding the issues in favor of the insurance company, and we are unable to find that the verdict of the jury was manifestly against the weight of the evidence. Indeed, we are of opinion that the evidence would have been sufficient to have warranted the jury in finding the verdict was sustained by clear and convincing proof although we hold that the degree of proof required of the insurance company to support the allegations of its amended answer was by a preponderance of the evidence only.

4. We have considered all of the errors assigned on behalf of the appellant and are unable to find that the verdict of the jury or the judgment of the court rendered thereon is contrary to law, and we are further unable to certify that substantial justice has not been done. Finding no

error upon the record prejudicial to the rights of appellant, the judgment of the Common Pleas Court is affirmed.

Judgment affirmed.

CARTER and ROBERTS, JJ, concur.